the second term after the suggestion of the death of the plaintiff, and the cause ought not to have been brought forward on the docket.

Mr. Law and Mr. Randall, contra, contended that the act of 1785, c. 80, applies only to cases where there is no appearance on either side, the previous clauses of the act having provided for the case of the death of one of the parties. The words are, "in case there be no appearance or proceeding by either party;" but here there has been constantly an appearance of one party and a proceeding, that is, a continuance at the request of the defendant. But if there was a legal discontinuance, the objection comes too late after verdict. The defendant, by going to trial has waived the discontinuance. By the statute of jeofails the defect is cured by the verdict. After verdict, judgment shall not be arrested on account of a discontinuance. 1 Com. Dig. 460, 462, tit. "Amendment;" 5 Com. Dig. 538, tit. "Pleaders," S. 47; Tid. Pr. 835, 888.

THE COURT (THRUSTON, Circuit Judge, contra) informed Mr. Ashton that the construction given by him to the act of 1785, c. 80, was that which had been uniformly given by the courts of Maryland, and requested him to confine his argument to the question whether the discontinuance can be taken advantage of after verdict.

Mr. Ashton and Mr. Jones, in reply, contended that the writ was abated, and therefore no judgment could be rendered. 5 Com. Dig. 537; Salk. 77. After the death of R. Brent, the cause could not be continued by consent, and the court could not continue it beyond the tenth day of the second term after the suggestion of the death.

THE COURT, after several days' consideration, was of opinion (nem. con.) that the discontinuance was cured by the verdict. A writ of error was taken, but not prosecuted.

[NOTE. For subsequent proceedings and denial of motion to quash the execution, see Case No. 1,838.]

## Case No. 1,838.

### BRENT v. COYLE.

[2 Cranch, C. C. 348.][1]

Circuit Court, District of Columbia. Oct. Term, 1822.

#### EXECUTION—WAIVER OF STAY.

A motion for a new trial, or in arrest of judgment, is a waiver of the benefit of a stay of execution agreed upon by the parties.

Mr. Ashton, for the defendant, moved to quash an execution which had been issued before the expiration of the stay agreed upon by the parties.

The verdict was rendered on the 11th of April, 1822. The defendant agreed that judgment should be entered upon the ver-

dict, and the plaintiff agreed to stay execution two months; and that if, during the two months, any case should be carried up to the supreme court resting on the same point, the stay should be enlarged until the decision of such case by the supreme court. The defendant, however, within the two months, moved the court for a new trial and in arrest of judgment, which motions were overruled by the court on the 10th of June, 1822. Within the two months, the case of Bank of Columbia v. Renner, involving the same point, but not resting altogether on the same point, was taken up to the supreme court. [Renner v. Bank of Columbia, 9 Wheat. (22 U. S.) 581.] The execution was issued on the 3d of September, 1822.

THE COURT (THRUSTON, Circuit Judge, absent) overruled the motion, being of opinion that the defendant, by moving for a new trial and in arrest of judgment, must be considered as having waived the benefit of the agreement to stay the execution.

[NOTE. For judgment upon the merits herein, see Case No. 1,837.]

---

BRENT (FENWICK v.). See Case No. 4,732.

---

## Case No. 1,839.

### BRENT v. HAGNER.

[5 Cranch, C. C. 71.][1]

Circuit Court, District of Columbia. Nov. Term, 1836.

#### REPLEVIN—TREASURY DEPARTMENT VOUCHERS.

Papers which have been filed in the proper accounting office of the treasury of the United States, as vouchers or documents to justify the settlement of a public account, are not liable to be taken from the public officer by replevin.

At law. Replevin for "a memorial of Caroline and Robert Brooke, the heirs of Michael Fenwick, deceased, of Saint Mary's county, Maryland, to the congress of the United States, asking payment for certain buildings occupied by the American troops, and destroyed by the British during the last war, signed by said Brent, as attorney of the memorialists; and also sundry depositions and evidences accompanying said memorial, and other depositions, evidences, and papers laid before a certain Peter Hagner, by said Brent, to obtain payment of said claim, the proper goods and chattels of him the said William L. Brent, which the said Peter Hagner, of the county aforesaid, hath taken and unjustly detains," &c. The writ was tested on the 30th of November, 1836, during the present term, and was issued on the 1st of December, 1836, returnable to the next term, March, 1837.

Mr. Key, for the defendant, moved the court to quash the writ, and to order the

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Hon. William Cranch, Chief Judge.]

papers to be returned. The marshal brought the writ into court, indorsed, "replevied and delivered as per schedule and receipt. Alexander Hunter, marshal." The schedule is in the words of the writ, and the papers are appraised at $50. The plaintiff's receipt for the same, was also indorsed upon the writ. Mr. Key's motion was supported by the following affidavit of Mr. Hagner: "District of Columbia, County of Washington, ss. Personally appeared before me, Robert Gelty, an acting justice of the peace in and for the county aforesaid, Peter Hagner, third auditor of the treasury department, and, having been duly sworn, deposeth and saith: That in support of the claim of the legal representatives of Michael Fenwick, deceased, for whose relief an act was passed at the last session of congress [Act July 1, 1836; 6 Stat. 661, c. 251], sundry papers were transmitted to this deponent, in June last, by William L. Brent, Esq., who, by certain of them, appeared to be the administrator of the estate of the said Michael Fenwick and trustee of Robert Brooke and S. A. Caroline, his wife, formerly S. A. Caroline Fenwick, the only child and heir of the said Michael Fenwick. That, on the 2d day of July last, the claim, so far as regards the provision made by the first section of the said act, was passed by the accounting officers of the treasury; when a requisition for the sum of $5,000 thereby authorized to be paid was delivered to the said William L. Brent, and the papers were placed on the files of the office of this deponent for preservation, agreeably to the act of the 3d of March, 1817 [6 Stat. 194, c. 81], by which it was established that, to obtain a further allowance under the second section of the first-mentioned act, certain other papers were, at subsequent periods, furnished to this deponent by the said William L. Brent, but, the testimony therein not being satisfactory, it was objected to by this deponent, and other required, which has not been supplied. That an application was made to this deponent by the said William L. Brent for permission to withdraw the papers, or to be furnished with a copy of all the evidence, so that he might lay the claim before congress, and use, as he thought proper, in any other way; that, in reply thereto, he was informed by this deponent that the rules of the office would not allow of the papers being withdrawn; that no copies would be necessary for congress, as the originals could all be transmitted there, on the application of the committee to whom the case might be referred; and that, if he desired copies for any other purpose, they could be taken by any person he might send for the purpose. That, on the first day of the present month, the said William L. Brent called at the office of this deponent, and requested to look at the papers, and, whilst the same were in his hands, the deputy-marshal made his appearance, and, under a writ of replevin, took, not only the testimony adduced under the second section of the first-mentioned act, but all the other papers previously transmitted, whereon the act was passed, and the $5,000 paid (with the exception of the official statement prepared in order to the payment of that sum); the appointment of the said William L. Brent as administrator; the copies of two deeds of trust to him; a deposition proving Mrs. Brooke to be the only child and heir of Michael Fenwick; a certified copy of the bill before it became a law; and two letters addressed to this deponent by the said William L. Brent. That the paper hereunto annexed, marked A, is a true copy of the notice, list, and receipt left with this deponent by the said deputy-marshal after having replevied the papers as aforesaid; and that deponent considers all the papers so replevied, which are connected with the before-mentioned payment of $5,000, as properly belonging to the files of his office. Robert Gettys, J. P., December 19, 1836."

Mr. R. J. Brent, for plaintiff, cited the case of Marbury v. Madison, 1 Cranch [5 U. S.] 139, to show that the officers of the government are liable to ordinary process, if they invade the vested rights of individuals; and he contended that detinue would not lie, because the papers could not be valued.

Mr. Key, contra, contended that they were now public documents, and, if such can be replevied at the will of every individual who may choose to claim them, the public documents would not be safe.

THE COURT (nem. con.) was of opinion that the writ of replevin ought to be quashed, and the papers returned; and made an order accordingly.

---

## Case No. 1,840.

BRENT v. JUSTICES OF THE PEACE.

[1 Cranch, C. C. 434.] [1]

Circuit Court, District of Columbia. July Term, 1807.

UNITED STATES MARSHALS—FEES.

The marshal of the District of Columbia is entitled to a fee of five dollars and fifty cents for summoning and impanelling a coroner's inquest in the county of Alexandria, to be paid by the county.

This was a rule on the justices of Alexandria county, to show cause why a mandamus should not issue against them as a board of commissioners for the taxes of the county, commanding them to settle the marshal's account, and allow him five dollars and fifty cents for summoning and impanelling each coroner's jury, by order of the coroner, they having allowed him only three dollars and fifteen cents, according to the act of assembly of Virginia. By the act of congress of 28th of February, 1799, c. 125, § 1 (1 Stat. 624), the marshal is entitled to four

[1] [Reported by Hon. William Cranch, Chief Judge.]